UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JAMES NIGEL LIKUBULI WATTS-FARMER,<br><br>                Petitioner,<br><br>    v.<br><br>PAULA ANDREA RODA CORTES,<br><br>                Respondent. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 22-4601 (KMW-SAK)<br><br>**OPINION** |

APPEARANCES:

Sescily Coney, Esquire
Coney Law
309 Fellowship Rd.
Suite 200
Mt. Laurel, NJ 08054
      Counsel for Plaintiff

Kristyl Berckes, Esquire
Lawrence Law, LLC
776 Mountain Boulevard
Suite 202
Watchung, NJ 07920
      Counsel for Defendant

**WILLIAMS, District Judge:**

**I.    INTRODUCTION**

      Petitioner James Nigel Likubuli Watts-Farmer ("Petitioner") filed a Verified Complaint and Petition ("Petition") seeking relief under the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq.* ("ICARA"), which implements the Hague Convention on the Civil Aspects of International Child Abduction ("Convention").[1]  Petitioner brings this Petition against

---

[1] This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a).

Respondent Paula Andrea Roda Cortes ("Respondent") seeking the return of their son, J.G.W.R., to Columbia. For the reasons outlined below, the Petition is denied.[2]

## II. BACKGROUND

### a. Procedural History

On or about January 21, 2022, Petitioner filed an application under the Convention with the Columbian Institute of Family Welfare, who subsequently forwarded the application to the U.S. Department of State.[3] Compl., ¶ 4. After learning of his son's location, on July 15, 2022, Petitioner filed the Petition [ECF No. 1]. On July 18, 2022, a Motion [ECF No. 4] seeking an *ex parte* hearing for the emergency return of J.G.W.R. was also filed. The Court scheduled a hearing on the *ex parte* Motion to proceed on July 19, 2022, however, after receiving an adjournment request, the hearing ultimately proceeded on July 21, 2022. *See* Text Order, ECF No. 7, Jul. 19, 2022. During the July 21, 2022 hearing, the Court outlined various deficiencies in the document filed with Court, such as Petitioner signing the Petition as "God is Love" as opposed to his name and the failure to provide the requisite attorney certification with the Motion seeking an *ex parte* hearing. Petitioner requested two weeks to file amended documents. Thus, by Order dated July 22, 2022, the Court ordered Petitioner to file an amended Petition, containing Petitioner's proper signature, an attorney certification supporting the *ex parte* Motion seeking a hearing for the emergency return of the child, any child custody orders, or other documentation in support of the Petition. Text Order, ECF No. 10, Jul. 22, 2022. The Court also scheduled a hearing to address the emergency *ex parte* Motion for August 8, 2022. *Id.*

---

[2] As set forth *infra*, The Court notes that the original Petition was amended. *See* ECF No. 12. Nonetheless, the Court will continue to refer to the amended Petition as "Petition."

[3] Petitioner filed the application after being advised by Respondent that J.G.W.R. would not be returning to Columbia.

Petitioner did not file any amended documents by August 4, 2022. Thus, on August 6, 2022, based on Petitioner's failure to comply with the Court's July 22, 2022 Order, the Court adjourned the August 8, 2022 hearing and rescheduled it for August 9, 2022. Text Order, ECF No. 11, Aug. 6, 2022. An amended Petition [ECF No. 12] and an amended Motion [ECF No. 13] removing the *ex parte* designation, were filed on August 7, 2022. The amended Petition and Motion did not include any provisional orders from Columbia concerning the custody and care of J.G.W.R. During the August 9, 2022 hearing, Petitioner, having advised that he no longer sought to proceed *ex parte* as he did not believe Respondent would abscond with the child, determined that he would serve Respondent to secure her participation in the proceedings. Thus, the Court ordered that Respondent be served and set a hearing for August 12, 2022. Order, ECF No. 15, Aug. 9, 2022.

Respondent was successfully served and filed a letter on August 11, 2022, indicating that she had COVID-19 and, thus, could not attend the August 12, 2022 hearing; as such, the hearing was rescheduled for August 16, 2022. Text Order, ECF No. 18, Aug. 11, 2022. As a result of the August 16, 2022 hearing, the Court entered an Order directing the U.S. Marshal to take physical custody of the child and release the child to the temporary custody of New Jersey's Division of Child Protection and Permanency; the Order also continued the hearing to August 17, 2022. Order, ECF No. 20, Aug. 16, 2022. After conducting proceedings on August 17, 2022, appointing pro bono counsel for Respondent, and implementing a temporary shared visitation arrangement between Petitioner and Respondent, an evidentiary hearing was set for September 6, 2022. Order, ECF No. 22, Aug. 17, 2022; Order, ECF No. 23, Aug. 18, 2022.

Due to various missteps and procedural and scheduling issues, the evidentiary hearing was rescheduled several times up until its commencement on September 7, 2022. The

evidentiary hearing did not conclude until September 16, 2022.  Proposed Findings of Facts and Conclusions of Law were filed by Petitioner on October 11, 2022, and Respondent on October 25, 2022.  In November 2022, Respondent directly submitted to the Court via email an untranslated copy of a document – Resolution Number 117 ("Resolution 117"), which was issued following a November 2022 hearing in Columbia relating to domestic violence proceedings between Petitioner and Respondent.  Respondent's counsel was advised of the correspondence from Respondent and instructed to have the document translated and properly filed with the Court.  On February 17, 2023, the Court conducted a telephone status conference and again directed that Resolution 117 be filed with the Court.  *See* Text Order, ECF No. 67.  Resolution 117 was filed on March 9, 2023.

    **b. Findings of Fact**

The facts relevant to disposition of this Petition are straightforward.  Petitioner's amended Petition [ECF No. 12] avers that Respondent, Petitioner's estranged wife and mother of their eight-year-old son, J.G.W.R., wrongfully removed J.G.W.R. in December 2021.  Compl., ECF No. 12, I. ¶¶ 1-5; III. ¶¶ 7, 18.  It is undisputed that Respondent sought Petitioner's consent to renew J.G.W.R.'s passport to travel to the United States to visit Respondent's family from December 21, 2021 through December 31, 2021, and also that Petitioner's signature was required. Compl. III. ¶ 12; Tr. 30:13-31:23, ECF No. 63; Tr. 45:9-12, ECF No. 63.  After traveling with the child to the United States, on December 23, 2021, Respondent informed Petitioner that she had no intention of bringing the child back to Columbia.  Compl. III. ¶¶ 13-14; Tr. 35:8-12; Tr. 52:19-22, ECF No. 61.

The record establishes that domestic violence – physical, verbal, psychological, and sexual in nature – plagued the relationship between Petitioner and Respondent.  Based on

allegations of domestic violence, the Family Commissioner, Mayor's Office of Medellin ("Family Commissioner"), issued Resolution Number 66 ("Resolution 66") in June 2020 ordering that the custody and personal care of J.G.W.R. be awarded to Respondent. Ex. G-a. In July 2020, Resolution Number 72 ("Resolution 72") was issued in favor of Petitioner for protection against aggression or domestic violence by Respondent – Resolution 72 did not provide Petitioner with access to J.G.W.R. Ex. H-a. Prior to Respondent's arrival in the United States and in direct contravention of Resolution 66 prohibiting Petitioner custody and personal care of J.G.W.R., J.G.W.R. lived with Petitioner from Monday afternoon through Friday morning, and with Respondent from Friday afternoon through Monday morning. Compl. III ¶ 7; Tr. 71:18-24, ECF No. 61. This arrangement was not reduced to writing and Respondent testified that she involuntarily agreed to this arrangement after threats from Petitioner. Tr. 26:7-27:25, 53:6-13, ECF No. 63.

Finally, after an investigation, submission of evidence, and testimony at a hearing, on November 3, 2022, Resolution 117 was issued by the Family Commissioner which, *inter alia*, holds Petitioner responsible for "acts of domestic violence" against Respondent; institutes definitive protective measures in favor of Respondent; directs Petitioner to "stay away" from Respondent; directs Petitioner to attend a program for the treatment of psychoactive substances and relating to parenting; and granting Respondent custody and provisional personal care of J.G.W.R.

### III.  LEGAL STANDARD

The Convention, Article 1, sets forth its two primary objectives: "'(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively

respected in the other Contracting States.'" *Karpenko v. Leendertz*, 619 F.3d 259, 263 (3d Cir. 2010). The Convention provides a legal process "'to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases'"; it "does not provide a forum to resolve international custody disputes." *Id.* (quoting *Yang v. Tsui*, 499 F.3d 259, 270 (3d Cir.2007)).

The Third Circuit explained:

> Under the Hague Convention, the petitioner bears the initial burden of proving by preponderance of the evidence that the child was habitually resident in a State signatory to the Convention and was wrongfully removed to a different State as defined by Article 3. A child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child's perspective.

*Id.* (internal citations and quotations omitted). The Third Circuit further instructs courts to employ the following analysis of the petitioner's burden:

> A court must determine (1) when the removal or retention took place; (2) the child's habitual residence immediately prior to such removal or retention; (3) whether the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention.

*Id.* (internal citations omitted).

After the petitioner's initial burden is met, "the respondent may oppose the child's return by proving one of five affirmative defenses . . . (1) that a grave risk that the child's return would expose him or her to physical or psychological harm or otherwise place the child in an intolerable situation by clear and convincing evidence; (2) that the child's return would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms by clear and convincing evidence; (3) that the child is now settled in his or her new environment by preponderance of the evidence; (4) that the person from whom the child was removed was not exercising custody rights at the time of removal or

retention, or had consented to or subsequently acquiesced in the removal or retention by preponderance of the evidence; or (5) that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views by preponderance of the evidence." *Id.* at 263, fn. 3. "The affirmative defenses are narrowly construed to effectuate the purposes of the Convention, and even finding an exception under article 13 does not automatically preclude an order of return." *Baxter v. Baxter*, 423 F.3d 363, 368 (3d Cir. 2005).

## IV.   CONCLUSIONS OF LAW

### a.   Wrongful Removal – Rights of Custody

Respondent only disputes one factor: whether the removal breached the Petitioner's rights of custody, arguing that the rights of custody does not implicate parental authority. Resp. Br. 5-7. Here, the Court finds that J.G.W.R.'s removal did in fact breach Petitioner's rights of custody. "The Convention protects rights of custody when 'at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.'" *Abbott v. Abbott*, 560 U.S. 1, 13 (2010). The Supreme Court found that "rights of custody" may extend beyond traditional notions of physical custody, finding that parents may also enjoy *ne exeat* rights. *Abbott*, 560 U.S. at 11-12. The Supreme Court explained:

> [A] *ne exeat* right is by its nature inchoate and so has no operative force except when the other parent seeks to remove the child from the country. If that occurs, the parent can exercise the *ne exeat* right by declining consent to the exit or placing conditions to ensure the move will be in the child's best interests. When one parent removes the child without seeking the *ne exeat* holder's consent, it is an instance where the right would have been "exercised but for the removal or retention.

7

*Abbott*, 560 U.S. at 13 (internal quotations omitted). Thus, if the law of a country confers upon a parent *ne exeat* right to consent to removal of a child or to determine a child's country of residence, that is a right of custody under the Convention. *Abbott,* 560 U.S. at 14-15.

Here, at the time of J.G.W.R.'s removal, Resolution 66 enjoined Petitioner's custody and personal care of the child. Resolution 66 granted Respondent full custody, albeit provisional, of J.G.W.R. However, at the time of the removal, Article 110 of Law 1098 of 2006, Code of Childhood and Adolescence, established that when a child is going to leave the country with one of the child's parents, permission must be obtained from the person who will not travel; authorization is not required from a parent whose parental authority has been suspended or terminated. Petitioner's Expert Report of Gonzalo Anibal Parrado Ochoa, at 6 (citing Law 1098 of 2006, Code of Childhood and Adolescence), Art. 110, ¶ 1. Respondent was required to obtain Petitioner's authorization to exit Columbia with J.G.W.R. for the trip to the United States, which Respondent represented dates certain for both the departure and return. Thus, as determined by the Supreme Court in *Abbott*, Petitioner maintained a right of custody by virtue of the *ne exeat* right to determine when and whether J.G.W.R. would be removed from Columbia. Petitioner meets his initial burden of demonstrating a wrongful removal.

### b. Grave Risk of Harm Affirmative Defense

Respondent also invoked the grave risk of harm affirmative defense. Resp. Br. 7-10. Article 13(b) of the Convention provides that courts are not required to order a child to return where "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." The Supreme Court recognizes sexual abuse of a child, physical or psychological abuse, serious neglect, and/or domestic violence in the home may constitute a grave risk of a child being exposed to physical or

8

psychological harm or otherwise pose a risk of harm to a child's safety.[4] *Golan v. Saada*, 142 S. Ct. 1880, 1894 (2022). As set forth above, Respondent bears the burden of proving this defense by clear and convincing evidence. *Golan*, 142 S. Ct. at 1894.

Here, Respondent has met her burden of establishing this affirmative defense. There was a provisional order of protection entered in favor of Respondent in Columbia – Resolution 66. Indeed, while there was an order of protection entered in favor of Petitioner (Resolution 72), only Respondent's Resolution provided her custody and care of the minor child and precluded Petitioner's ability to visit with J.G.W.R. Moreover, only Respondent's Resolution provided that Respondent's request for protection "is credible and is a serious indication of the occurrence of the act of violence, a situation that must be addressed to avoid new acts of violence and prevent peace and family harmony continuing to be disturbed." Resolution No. 66. While Dr. Ochoa testified to the provisional nature of Resolution 66, being entered prior to a formal investigation, Dr. Ochoa also confirmed that if Resolution 66 were shown to the school or to the authorities, Petitioner would not have been permitted to visit with or have the child. Tr. 19:7-16, ECF No. 65. Notably, in violation of Resolution 66, Petitioner still saw J.G.W.R. five days a week. Respondent testified that Petitioner would threaten her – monetarily (withholding financial support) and physically – to force compliance with this arrangement. Tr. 26:7-27:25, 53:6-13, ECF No. 63.

---

[4] Contrary to Petitioner's argument and reliance on *Friedrich v. Friedrich*, 78 F. 3d 1060 (6th Cir. 1996) for the proposition that grave risk of harm can exists if it puts the child in imminent danger, like returning the child to a zone of war, famine, or disease, the Supreme Court in *Golan* does not articulate these considerations at any point in their discussion of the grave risk harm issue. Moreover, the Supreme Court expressly notes that circumstances not rising to the level of famine or war may constitute risk to a child when it stated that "[o]ther physical or psychological abuse, serious neglect, and domestic violence in the home may also constitute an obvious grave risk to the child's safety . . ." *Golan*, 142 S. Ct. at 1894.

Significantly, Respondent supplemented the record to provide Resolution 117, resulting from the investigation and disposition of the domestic violence allegations by Respondent against Petitioner addressed in the foregoing provisional Resolutions. Resolution 117, Nov. 3, 2022, ECF No. 72. Resolution 117 confirms systemic issues surrounding domestic violence, particularly verbal and psychological, and that said incidents have occurred in the presence of J.G.W.R. Resolution 117, 17-20. Resolution 117, after reciting the findings of an investigation, holds Petitioner responsible for "acts of domestic violence" against Respondent; institutes definitive protective measures in favor of Respondent; directs Petitioner to "stay away" from Respondent; directs Petitioner to attend a program for the treatment of psychoactive substances and relating to parenting; and grants Respondent custody and provisional personal care of J.G.W.R., among other things. *Id.* at 23-28. It is also an undisputed fact in this case that despite the existence of prior Resolutions prohibiting Petitioner from having custody of, or caring for, the child, he continued to do so. The foregoing clearly and convincingly demonstrates a grave risk that returning J.G.W.R. to Columbia would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

V.   **CONCLUSION**

Petitioner's Verified Complaint and Petition (as amended) seeking the return of J.G.W.R. to Columbia is denied. The Court's decision does not impact any ongoing custody proceedings in Columbia. An accompanying Order will issue.

Dated:  April 30, 2023

*Karen M. Williams*
KAREN M. WILLIAMS
United States District Judge

10